UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

METRO CHRYSLER PLYMOUTH, INC.
d/b/a STAR CHRYSLER JEEP DODGE FIAT,

Plaintiff,

v.

FCA US LLC a/k/a STELLANTIS and SOUTH
SHORE AUTOPLEX, LLC d/b/a SOUTH
SHORE CHRYSLER JEEP DODGE RAM,

Defendants.

**MEMORANDUM & ORDER**
22-cv-05646 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff originally filed this action in the Supreme Court of New York, Queens County, on June 21, 2022. ECF No. 1-2. On September 21, 2022, Defendant FCA removed the action to this Court, asserting diversity of citizenship as the basis for federal subject matter jurisdiction. ECF No. 1. Plaintiff now moves to remand the case to state court. For the reasons set forth below, the Court grants Plaintiff's motion.

## BACKGROUND

Plaintiff Metro Chrysler Plymouth, Inc., doing business as Star Chrysler Jeep Dodge Fiat ("Star"), is a car dealership based in Queens, New York, that sells vehicles manufactured by Defendant FCA US LLC ("FCA"). Plaintiff alleges that "on or around June 1, 2022" FCA "orally informed Star that it intended to allow" another car dealership, Defendant South Shore Autoplex, LLC ("South Shore") "to relocate its operations to a location within Star's statutory 'relevant market area.'" ECF No. 13-6 at 5; *see also* ECF No. 1-5 ¶ 36, 40–44.

On June 21, 2022, Plaintiff filed an initial pleading ("Summons with Notice" or "Summons") in Queens County Supreme Court alleging that FCA violated the Franchised Motor

Vehicle Dealer Act ("Dealer Act"), N.Y. Veh. & Traf. Law § 460 *et seq*., and joined South Shore "as a necessary and indispensable party under CPLR § 1001." ECF No. 1-2 at 5–6; ECF No. 13-6 at 10. The Summons alleged that FCA violated the Dealer Act by: (1) "approving the relocation of South Shore into Plaintiff's relevant market area . . . without written notice"; (2) "approving a relocation of South Shore into Plaintiff's relevant market area without good cause"; (3) "utilizing a discriminatory, unreasonable, arbitrary or unfair system of allocation of new vehicle inventory"; (4) "utilizing an unreasonable and unfair performance metric"; and (5) "selling or offering to sell new vehicles to other dealers in the State of New York at lower prices than offered to Plaintiff." ECF No. 1-2 at 5–6. The Summons states that Plaintiff seeks injunctive relief and damages of at least $5 million dollars. *Id.* at 6. On September 1, 2022, Plaintiff filed its Complaint. ECF No. 1-5.

On September 21, 2022, FCA filed its Notice of Removal. ECF No. 1. A week later, on September 28, it filed a Partial Motion to Dismiss Count 1 of the Complaint, arguing that Plaintiff lacks Article III standing to sue because "FCA US does not, in fact, intend to approve South Shore's move [into Plaintiff's relevant service area] as initially discussed" and that Plaintiff failed to state a claim. ECF No. 5-1 at 1–2.

On October 12, 2022, Plaintiff filed its Motion to Remand. ECF No. 13-6. On October 17, 2022, FCA filed its opposition. ECF No. 17. Plaintiff did not file a reply brief.

## **LEGAL STANDARD**

Defendant FCA invokes federal jurisdiction based on diversity of citizenship. A district court has subject matter jurisdiction over a case pursuant to 28 U.S.C. § 1332(a) when two requirements are met: (1) there is "complete diversity" such that no defendant is a citizen of the

2

same state as any plaintiff, and (2) the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).

"A plaintiff, however, may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants non-diverse parties with no real connection with the controversy"—a practice known as "fraudulent joinder."  *Recovery Racing III, LLC v. Maserati N. Am., Inc.*, No. 17-CV-1028, 2017 WL 11515232, at *2 (E.D.N.Y. Sept. 27, 2017) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998)) (internal quotation marks and alterations omitted).  "[T]he absence of a formal cause of action against a defendant, by itself, does not establish fraudulent joinder."  *Recovery Racing III*, 2017 WL 11515232, at *2.  Rather, to prove fraudulent joinder, the defendant opposing remand must prove that the non-diverse party is not "a necessary or indispensable party to [the] lawsuit."  *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, 08-CV-1773, 2009 WL 385541, at *4 (E.D.N.Y. Feb. 11, 2009).  "[T]he jurisdictional analysis for removal occurs at the time of removal based upon the necessity of the party under state law."  *Id*. at 5 n.2.  Under New York law, "[p]ersons who . . . might be inequitably affected by a judgment in the action . . ." are considered necessary parties.[1]  CPLR § 1001(a).

"The party opposing remand bears the burden of demonstrating fraudulent joinder by clear and convincing evidence."  *Recovery Racing III*,  2017 WL 11515232, at *3; *see also Pampillonia*, 138 F.3d at 461 ("The defendant seeking removal bears a heavy burden of proving

---

[1]   The Court evaluates South Shore's joinder under New York law.  *See Audi of Smithtown*, 2009 WL 385541, at *5 n.2  ("[W]here the issue is fraudulent joinder, the Court looks to *state law* in order to determine the nature of [the non-diverse defendant's] interest in this litigation.") (emphasis added); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("Under the doctrine [of fraudulent joinder], courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted *in state court*.") (emphasis added).

3

fraudulent join[d]er."). "In analyzing the fraudulent joinder issue, the court is permitted to look beyond the pleadings." *Audi of Smithtown*, 2009 WL 385541, at *3. In addition, any disputes of fact, or unsettled legal issues "must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461; *see also Recovery Racing III*, 2017 WL 11515232, at *3; *Audi of Smithtown*, 2009 WL 385541, at *3.

As the party invoking the Court's diversity jurisdiction, Defendant has "the burden of proving that the case is properly in federal court . . . ." *United Food & Com. Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "All doubts about jurisdiction should be resolved in favor of remand to state court." *Surgicore of Jersey City v. Anthem Life & Disability Ins. Co.*, No. 19-cv-3482, 2020 WL 32447, at *1 (E.D.N.Y. Jan. 2, 2020).

When a federal court lacks subject matter jurisdiction to adjudicate a removed case, the proper remedy is to remand the case to state court rather than to dismiss the claims. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014). A court may remand on such grounds "at any time before final judgment" after the jurisdictional defect has been raised. *Id.* (quoting 28 U.S.C. § 1447(c)).

## DISCUSSION

Plaintiff argues that South Shore was properly joined in state court because "[a]n injunction prohibiting FCA from allowing South Shore to relocate its operations into Star's relevant market would adversely affect it," and South Shore is therefore a necessary party under CPLR § 1001. ECF No. 13-6 at 18. FCA counters that South Shore is not a necessary party because "South Shore has no material interest in the subject matter and will not be affected by its

4

outcome, because the Proposal [to relocate South Shore's operations into Star's relevant market] will not be approved either way."  ECF No. 17 at 9.

The parties each place significant emphasis on the similarities between this case and other diversity cases that have involved violations of the Dealer Act.  Plaintiff argues that this case is similar to *Audi of Smithtown v. Volkswagen* and *Recovery Racing III v. Maserati North America*.  In *Audi of Smithtown*, a case involving an alleged two-tier pricing scheme, the court found there was no fraudulent joinder because the non-diverse party "may be affected by any judgment" as it was receiving favored pricing under the scheme.  *Audi of Smithtown*, 2009 WL 385541, at *2.  *Recovery Racing III* involved a dealer that had "contracted, or is in the process of contracting," to open a new dealership in the plaintiff's relevant market area.  *Recovery Racing III*, 2017 WL 11515232, at *3.  There the court found that the plaintiff had presented evidence suggesting the existence of an agreement between the removing defendant and the non-diverse defendant, and so could not "say that defendants have established, by clear and convincing evidence, that [the non-diverse party] lacks any interest that might be inequitably affected by an injunction."  *Id*. at *5.

Defendant FCA asks the Court to discount *Audi of Smithtown* and *Recovery Racing III*, and instead to rely on *CMS Volkswagen Holdings, LLC v. Volkswagen Grp. Of Am., Inc*.  No. 13-cv-03929, 2013 WL 6409487 (S.D.N.Y. Dec. 6, 2013).  In *CMS Volkswagen*, several dealerships argued that manufacturer Volkswagen Group's incentive program was using a discriminatory formula for calculating sales performances in violation of the Dealer Act.  *Id*. at *1–2.  The Court dismissed the non-diverse party—another auto-dealer also subject to the formula—as not necessary to the action because the impact of the incentive program on the non-diverse dealership was not clear.  *Id.* at *6–7.  FCA argues that *CMS Volkswagen* stands for the

5

proposition that a non-diverse party is not necessary if it "does not automatically lose anything" in the event plaintiff receives a judgment in its favor. *Id.* at *6.

The Court, however, finds *CMS Volkswagen* distinguishable. There, the court found that the non-diverse defendant was fraudulently joined because it would "not impact the legality of the [incentive program]," and thus is "not critical in determining whether the [incentive program] violates the Dealer Act." *Id.* at *7. Here, the question is whether or not FCA violated the Dealer Act when it orally informed Plaintiff of South Shore's intended relocation. The Court finds that this case is similar to *Recovery Racing III*. There, as here, the non-diverse dealership was allegedly "in the process of . . . open[ing] the new dealership," and thus was critical to the plaintiff's claims. *Recovery Racing III*, 2017 WL 11515232, at *3.

FCA argues that "unlike in *Recovery Racing III*, the Complaint and record contains no allegation that there is an agreement between FCA US and South Shore." ECF No. 17 at 10. The Court disagrees. The Court must resolve all factual issues in favor of the Plaintiff, *Pampillonia*, 138 F.3d at 461, and finds that Plaintiff's allegation that it received an "oral notice of the relocation," ECF No. 13-6 at 19; ECF No. 1-5 ¶ 36, 40–44, and the evidence supporting that proposition, as sufficient to "suggest an agreement between the defendants."[2] *Recovery Racing III*, 2017 WL 11515232, at *4.

FCA further argues that this case is distinguishable from *Recovery Racing III*, and similar to *CMS Volkswagen*, because FCA has "already disclaimed its intention of approving" the proposed relocation. ECF No. 17 at 10. According to FCA, because it does not intend to

---

[2] The Court also notes that an agreement between FCA and South Shore is not necessary for the Court to find South Shore's interests would "be inequitably affected by a judgment in the action" as required under CPLR § 1001(a).

6

approve the proposal, South Shore has "nothing to lose" in this case, and thus, like the non-diverse defendant in *CMS Volkswagen*, is not a necessary party. *Id.*

The Court, however, is not persuaded that FCA has established, by clear and convincing evidence, that South Shore has "nothing to lose," and no interest that might be "inequitably affected by an injunction." *Recovery Racing III*, 2017 WL 11515232, at *5. Rather, there appear to be two competing versions of what transpired. FCA argues that there never was an agreement; instead, FCA and South Shore were engaged in an "informal discussion" for which written notice was never required. ECF No. 17 at 11–12. It further argues that email correspondence between the parties shows that there never has been, nor will there be, an agreement between FCA and South Shore to relocate. *Id.* at 12–13.

In contrast, Plaintiff alleges that it was orally informed by FCA that "it intended to allow South Shore to relocate within Star's relevant market area without providing written notice." ECF No. 13-6 at 19. Plaintiff alleges that the process of relocating South Shore had gone beyond the informal discussion state—when it filed the summons against both Defendants it allegedly believed that FCA "may have already permitted [South Shore's] relocation." *Id.* at 10. Plaintiff points to the same email correspondence but emphasizes portions of the correspondence that state no final decision has been made by FCA to imply that, contrary to Defendant's assertions, an agreement between FCA and South Shore to relocate was in process at the time of removal. ECF No. 13-6 at 15; *Recovery Racing III*, 2017 WL 11515232, at *3.

Once again, the Court must resolve all factual issues in favor of the Plaintiff. With that in mind, the Court does not understand the email correspondence to say that FCA has unequivocally stated it would not be entering into an agreement with South Shore. At best, the correspondence appears to show an offer by FCA not to enter into an agreement with South

7

Shore if Star agrees to withdraw its Summons and Notice. *See* ECF No. 13-5 at 3 ("South Shore will agree not to move forward with the proposal, and FCA will agree not to approve the proposal, for the service location in your client's RMA. In return, will you agree to completely withdraw Star's Summons and Notice?"). An agreement not to "move forward with the proposal" does not mean that said proposal was not "in process" at the time of the removal.

On this record, the Court cannot say that FCA has established, by clear and convincing evidence, that South Shore lacks any interest that might be inequitably affected by an injunction. *Recovery Racing III*, 2017 WL 11515232, at *3. South Shore is therefore a necessary party under CPLR § 1001, and its joinder was not fraudulent.[3]

## CONCLUSION

For the foregoing reasons, the Court lacks jurisdiction over this case. The Clerk of Court is therefore directed to remand this case to the Supreme Court of the State of New York, Queens County.

SO ORDERED.

>  */s/ Hector Gonzalez*
>  HECTOR GONZALEZ
>  United States District Judge

Dated: Brooklyn, New York
       November 9, 2022

---

[3] Plaintiff additionally argues that Defendant FCA's removal was not timely. ECF No. 13-6 at 7. Because the Court finds that South Shore is a necessary party and remands to state court for lack of jurisdiction, it does not reach the merits of that argument.